In the Matter of the Application of CHARLES H. OHLAU and BLAKE CONSTRUCTION CO., INC., Petitioners, for an Order of Mandamus against ALBERT E. KLEINERT, as Superintendent of Buildings of the Borough of Brooklyn, City of New York, Respondent.

Supreme Court, Kings Special Term, August, 1923.

**New York city — when superintendent of buildings without power to revoke building permit — permit for part of structure — change of " use district "— Building Zone Resolution, § 23.**

Under section 4(7) of the Building Code the superintendent of buildings in the city of New York has no power to revoke any permit issued by him except " in the case of any false statement or misrepresentation as to a material fact in the application on which the permit or approval was based."

Upon a proper application for the erection of a garage said superintendent issued a permit for the installation of necessary footings for the buildings. After the contracts had been made in connection with the erection of the garage the superintendent notified petitioner that he had revoked the said permit. *Held*, that no case having been presented coming within section 4(7) of the Building Code, the attempted revocation was without legal effect, and that a motion for a mandamus to compel the superintendent to recall said revocation and to issue the final permit will be granted, with costs.

While it may be that the superintendent could not be compelled to issue a permit covering only a part of the structure, yet having issued one it became just as much a permit issued pursuant to law as a permit for the construction of an entire building.

After the attempted revocation of the permit the board of estimate and apportionment granted a petition to change a " use district " in which the property in question here is located and thereby included it within the district in which a garage could not be erected. At the time the permit was issued there was no prohibition against the erection of a garage as proposed. *Held*, that by virtue of sections 23 and 24 of the Building Zone Resolution, regardless of the property rights of the petitioners, the change of the Building Zone Resolution did not affect their rights in the matter.

The clear meaning of section 23 of the Building Zone Resolution is that if before an amendment thereto the construction of a building was permissible in a certain district and a permit for its erection had been issued, the amendment would

not interfere with the erection of the building although the property was thereby put into a district in which the erection of structures such as the one in question here was not permitted.

PETITION for mandamus.

*Richards, Smyth & Conway* (*Albert Conway*, of counsel), for petitioner.

*George P. Nicholson*, corporation counsel of the city of New York (*Joseph P. Reilly*, of counsel), for respondent.

CROPSEY, J.  It is undenied that a proper application was made upon proper plans filed for a permit for the erection of a garage and that on March 29, 1923, the superintendent of buildings issued a permit for the installation of necessary footings for the building in question; that thereupon and before the superintendent endeavored to revoke the permit, contracts had been made in connection with the erection of the garage and the petitioners had become obligated therefor; that on April 7, 1923, the superintendent notified petitioner that he had revoked the permit issued by him on March twenty-ninth; that on March 30, 1923, a petition was filed with the board of estimate and apportionment seeking to change a " use district," in which the property in question is located; that later in May of 1923 that petition was granted and the property in question was thereby included within the district in which garages could not be erected; that at the time the permit was issued there was no prohibition against the erection of a garage as proposed.  Petitioner seeks a mandamus to compel the superintendent to revoke or recall his revocation of the permit and to issue a final permit.  There is no answer interposed by or on behalf of the superintendent.  Nor is there any affidavit made by him submitted in opposition to the motion.  There is an affidavit and it is the only one submitted in opposition, made by an assistant engineer in the bureau of buildings of the borough of Brooklyn.  This states that affiant is acquainted with the facts regarding the filing of the plans referred to in this proceeding but nothing is shown that he is familiar with the action taken thereupon, although he denies in his own name and not in the name of the superintendent that the plans have been approved by the latter and alleges that they *were* received on March twenty-seventh and have not been examined by the bureau and have not been approved by the bureau or the superintendent or any other person on his behalf.  This cannot be considered a proper answer or replying affidavit but if it were it contains no denial of any of the facts heretofore stated.  The corporation counsel in his brief states that permits such as the one issued herein by the superintendent, are not

issued " as a matter of right but as a courtesy to and for the convenience of builders. They are in the nature of licenses revocable with or without cause at the will of the Superintendent of Buildings." I find no support for these assertions and the corporation counsel submits none. They are at variance with the provisions of the Building Code. That makes provisions for two permits. Under it the superintendent may either issue a permit for the entire structure or before doing so may issue a permit for the construction of a part of the building. Bldg. Code, § 4, subds. 1, 2. It may be the superintendent could not be compelled to issue a permit covering only a part of the structure, but having issued it it becomes just as much a permit issued pursuant to law as a permit for the construction of an entire building. Upon the argument the corporation counsel conceded that if construction was begun under such a permit it could not then be revoked by the superintendent and yet if it was not issued as a matter of right and had no legal effect that result would not follow. The law gave the superintendent the right to issue the permit in question and he did issue it properly upon the proper application having been made. The question is whether he had the power to revoke it. Subdivision 7 of the section of the Building Code already referred to gives the superintendent the power to revoke any permit issued by him " in the case of any false statement, or any misrepresentation as to a material fact in the application on which the permit or approval was based." The superintendent has no other power of revocation. His sole power in this regard is, therefore, limited to the causes stated. In this instance no such cause existed and it is not claimed there were any such grounds therefor. The superintendent had no power to revoke the permit and his action in attempting to do so was without legal effect. *G. & H. Building Corp.* v. *City of New York*, 202 App. Div. 814, 815; *G. & H. Building Corp.* v. *Kleinert*, N. Y. L. J., July 11, 1922, Cropsey, J.

The change of the zoning resolution did not affect petitioners' rights. This is so by virtue of the provisions of the Building Zone Resolution regardless of the question of property rights of the petitioners. Section 24 of the Building Zone Resolution provides that nothing contained in the resolution shall require any change in the plans, construction or designated use of a building for which a building permit had been theretofore issued or plans for which were on file with the building superintendent at the time of the passage of that resolution and the permit for the erection of which is issued within the specified time. Thus had the situation here presented existed when the Building Zone Resolution was first enacted petitioners would have been entitled to erect their garage (having

theretofore received a permit for so doing) even though under the Building Zone Resolution the property upon which it was to be erected was within a district in which the erection of garages was not permitted. Section 23 of the same law covers the case of amendments to it. That provides that where an area is transferred to another district " the provisions of this resolution in regard to build-ings or premises existing at the time of the passage of this resolu-tion shall apply to buildings or premises existing at the time of passage of such amendment in such transferred area." This clearly means that if before an amendment the construction of a building was permissible in a certain district and a permit for its erection had been issued, the amendment would not interfere with its erection although the property was thereby put into a district in which the erection of structures such as the one in question was not permitted.

There may be some conflict in the authorities as to whether the amendment of the Building Zone Resolution, but for its provisions just referred to, would prevent petitioners from erecting the garage. Some cases seem to hold that one who has acted under a permit authorizing him to construct a building has obtained rights which cannot be taken away by such an amendment. *City of Buffalo* v. *Chadeayne,* 134 N. Y. 163; *People ex rel. Evens* v. *Kleinert,* 201 App. Div. 751, 755; *G. & H. Building Corp.* v. *City of New York, supra.* Other cases hold to the contrary upon the ground that the amendment is an exercise of the police power. *Southern Leasing Co.* v. *Ludwig,* 168 App. Div. 233; revd., on another ground, 217 N. Y. 100; *People ex rel. Publicity Leasing Co.* v. *Ludwig,* 172 App. Div. 71; *Matter of Cherry,* 201 id. 856, 857; *Cohen* v. *Rosedale Co., Inc.,* 120 Misc. Rep. 116. It is unnecessary for the reasons already stated to attempt to distinguish these cases from each other or if they are in conflict to indicate which holding would be favored. Even if the amendment of the Building Zone Law, but for the provisions of sections 23 and 24 thereof, would have the effect claimed by respondent, the provisions of those sections definitely say the amendment shall not have that effect where a permit has already been granted.

Petitioners are entitled to the mandamus order directing the superintendent to rescind or revoke the attempted revocation of his permit. While there is no denial of the statements in the moving papers that the plans filed in all respects complied with the requirements of law, the affidavit filed in opposition, if it may be considered at all, states that the superintendent has not passed upon the entire plan. If he does not do so within a reasonable time, petitioners may seek relief compelling him to do so. At this

time it seems not to be proper to compel the issuance of a permit covering the entire structure.

Motion granted as indicated, with fifty dollars costs.

Settle order on notice.

Ordered accordingly.